IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:09CR323 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| MANUEL J. TORRES, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's objections (Filing No. 37) to the Magistrate Judge's order and findings and recommendation (Filing No. 34) denying the Defendant's oral motion to reopen the record and recommending that the Defendant's motion to suppress be denied.

## FACTUAL BACKGROUND

Briefly, the Defendant, Manuel J. Torres, arrived on July 14, 2009, in Omaha, Nebraska on a Greyhound bus. Omaha Police Officer Richard Lutter noticed Torres get off a bus carrying a new cooler with tags on it. In Officer Lutter's experience, drugs have been hidden in new coolers. Officer Lutter stopped Torres, determined that he paid cash for a one-way ticket from Los Angeles to Omaha, and noticed that Torres was very nervous. When asked whether the officers could search his person, cooler and bag, Torres said "si" and made a gesture that the officers interpreted as indicating consent. Officers found a controlled substance in the cooler, and they placed Torres in handcuffs. A woman waiting to pick Torres up was also arrested. Both were transported and interviewed.

Judge Gossett stated additional facts on the record after the hearing on the motion to suppress. (Tr. 45-47.)

## DISCUSSION

The Court reviews an order to which objections are filed under 28 U.S.C. § 636(b)(1)(A) and NECrimR 59.2. A district court may set aside any part of the magistrate judge's order, on a non-dispositive matter, shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). The district court must review de novo any part of the magistrate judge's findings and recommendation to which a party objects, and the court may accept, reject, or modify the findings or recommendation. 28 U.S.C. § 636(b)(1).

### I. *Order Denying Motion to Reopen Hearing*

The Defendant objects to Judge Gossett's order denying his motion to reopen the hearing so that he can prove that the cooler was damaged. The Defendant argues that the dismantling of, and damage to, the cooler exceeded the scope of any consent given.[1] Judge Gossett found that "there is no evidence in this case that the item was irreparably damaged . . . . It, obviously, was taken into some of its parts, but there is no evidence in this record that there was any damage or irreparable damage done, depending upon how you find damage, to the item of the cooler." (Tr. at 50:7-12.)

---

[1] The issue had been raised initially in the Defendant's brief in support of the motion to suppress. (Filing No. 16, at 4.) The government did not address the issue in its responsive brief. (Filing No. 24.)

2

The parties and Judge Gossett discussed the matter after the hearing and the issuance of his oral ruling. Judge Gossett ordered the parties to brief the issues raised. The parties did so (Filing Nos. 30, 33), and the Defendant submitted a photograph of the cooler after it had been dismantled. (Filing No. 31.) The Defendant cited a number of cases for the proposition that a general consent to search does not contemplate damage to the item to be searched. (Filing No. 30, at 4-5.) In response, the government argues that by giving consent for the officers to "search" the cooler Torres consented to the dismantling of the cooler, and Torres was present during the search and did not object. Therefore, the government argues that the search that included dismantling of the cooler did not exceed the scope of the consent given.

A very similar case is *United States v. Santana-Aguirre,* 537 F.3d 929 (8th Cir. 2008), *cert. denied,* 129 S. Ct. 2051 (2009), which coincidentally also involved Officer Lutter. Santana-Aguirre ("Santana") argued that Officer Lutter exceeded the scope of Santana's consent to search by cutting into and destroying candles found inside of his suitcase. By cutting into the candles, Officer Lutter found a duct-taped bundle containing methamphetamine. The Eighth Circuit assumed for the sake of argument that the candles were destroyed. *Id.* at 932. The circuit court noted the generally accepted principles that "[c]onsensual searches generally cannot be destructive," and "[c]utting or destroying an object during a search requires either explicit consent for the destructive search or articulable suspicion that supports a finding that probable cause exists to do the destructive search." *Id.* The Eighth Circuit carefully considered the district court's finding that Santana

3

consented to the search of the candles, in light of the fact that Santana did not speak or understand English and Officer Lutter did not explain that he would cut into the candles. Ultimately, however, the Eighth Circuit found it unnecessary to reach the issue of consent because probable cause supported the destructive search of the candles. Considering the totality of the circumstances, the Eighth Circuit considered: the candles were large, plain, inexpensive, not of the type to be carried many miles in a suitcase, inconsistently layered, had holes and bumps separating the layers, and were not in original packaging; the lettering on the package was torn, and tape secured the package; officers' suspicions about Santana were otherwise aroused because, among other things, he had bought a one-way ticket with cash and appeared nervous; and another individual showed interest in the search of the candles even as he was being questioned. The Eighth Circuit therefore concluded that Officer Lutter had an articulable suspicion that supported a finding of probable cause to search the candles, and the destructive searches were reasonable. *Id.* at 933.

In Torres's case, he seemed nervous and had bought a one-way bus ticket with cash from Los Angeles, a recognized "source city," to Omaha. He carried a new cooler with its tags still attached, attracting Officer Lutter's attention because in his experience drug couriers transport illegal controlled substances in new coolers. Torres responded appropriately to Officer Lutter's request in Spanish to search his person and items carried, by saying "si," raising his arms and placing the cooler and bag closer to Officer Lutter. As Officer Eberle opened the cooler to search it, Officer Lutter heard "the pulling of plastic

4

away from a sticky surface," and saw that the area between the inner liner and the exterior of the cooler separated when Officer Eberle opened the cooler. (Tr. at 15:6-12.) While Officer Eberle was searching the cooler, Officer Lutter was interviewing Torres. However, Torres was not paying attention to, or even looking at, Officer Lutter. Rather, Torres was watching Officer Eberle search the cooler. (Tr. at 15:17-19.) Officer Eberle then told Officer Lutter that the cooler liner was loose, what looked like spray foam was around the liner, and a solid bundle seemed to be in the bottom of the cooler between the shell and the liner. (Tr. at 16:11-20.) Officer Lutter testified that he and Officer Eberle then looked more closely at the cooler and determined that, based on the "foam between the two liners [and] the looseness of the liner" they had "enough to detain" Torres. (Tr. at 16:23-17:4.) At that point the officers asked Torres to go with them in a rear baggage area so that the search of the cooler could be continued, and Torres did so willingly. The officers then removed the liner from the cooler while Torres stood beside them. (Tr. at 17:6-18:4.)

Viewing the totality of the circumstances, the facts support a finding of probable cause for the search of the cooler even more strongly than the facts supported the search of the candles in *Santana-Aguirre*. The evidence supports a finding that Torres understood what was happening. The cooler was unusual in that it was not only new but still had its tags attached. The officers had probable cause to complete the search of the cooler given their observations of Torres and the cooler, and Officer Lutter's experience with drug couriers and, specifically, drug couriers and new coolers. The destructive search of the cooler was reasonable. As in *Santana-Aguirre,* therefore, the Court need not reach the

5

issue of Torres's consent as it related to the destructive search of the cooler and the Defendant's motion to reopen the evidentiary hearing is denied. Therefore, the alleged destruction of the cooler is irrelevant. The Defendant's request to reopen the hearing to present evidence relating to the destruction of the cooler, and his objections to Judge Gossett's order denying the same, are denied.

## II.     Findings and Recommendation Regarding the Motion to Suppress

Torres objects to Judge Gossett's following conclusions: the initial encounter did not "involve" the Fourth Amendment; Torres voluntarily consented to the search of his belongings; and the consent was not limited in scope.

### A.     Initial Encounter

Torres argues that the officers' initial encounter in the bus terminal was not consensual and that Torres was detained once Officer Lutter asked to search Torres's person and belongings.

The Eighth Circuit has stated:

> "Although there is no litmus test for determining" whether an encounter is consensual or constitutes a seizure, "circumstances indicative of a seizure may include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person . . . , or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' "

*United States v. Santos-Garcia,* 313 F.3d 1073, 1078 (8th Cir. 2002) (quoting *United States v. White,* 81 F.3d 775, 779 (quoting *United States v. Angell,* 11 F.3d 806, 809 (8th Cir. 1993))).

6

Moreover, the absence of advice stating that Torres could leave does not indicate that the encounter was nonconsensual. *Id.*

In Torres's case, Officers Lutter and Eberle followed Torres into the bus terminal and approached him in a foyer just inside the doors to the outside of the terminal. Officer Lutter showed his badge and addressed Torres in English as he identified himself as a law enforcement officer and told Torres that he was not under arrest or in trouble. Officer Lutter realized from Torres's unintelligible response that a language barrier existed. Officer Lutter then switched to Spanish once he established that Torres spoke Spanish. Officer Lutter then repeated in Spanish that he was a law enforcement officer and the statement that Torres was not under arrest or in any kind of trouble. Torres stated "si" and proceeded to talk with Officer Lutter, appearing to understand Officer Lutter. Officer Lutter then asked Torres for his ticket, identification, and permission to search his person and belongings. Torres responded appropriately to Officer Lutter's requests with words and actions. Absent from the encounter was any evidence of a threatening presence of several officers as well as any display of weapons, physical touching, or use of language indicating required compliance by either officer.

In summary, the circumstances strongly indicate that the officers' initial encounter with Torres was consensual. The absence of advice stating that Torres could leave is not determinative. Torres's objections are denied.

### B.     *Consent to Search - Voluntariness and Scope*

For the reasons stated in section I of this discussion, the Court need not reach the issue of consent.  Torres's objections are denied.

Accordingly,

IT IS ORDERED:

1. The Defendant's objections to the Magistrate Judge's order and findings and recommendation (Filing No. 37) are denied;

2. The Magistrate Judge's order (Filing No. 34) denying the Defendant's motion for leave to reopen the record is affirmed;

3. The Defendant's oral motion to reopen the record is denied;

4. The Magistrate Judge's findings and recommendation (Filing No. 34) denying the Defendant's motion to suppress (Filing No. 14) are accepted; and

5. The Defendant's motion to suppress (Filing No. 14) is denied.

DATED this 4th day of January, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

8